STATE OF NORTH CAROLINA v. ALBERT LEWIS CAREY, JR.

No. 19

(Filed 1 July 1974)

1. **Constitutional Law § 29; Criminal Law §§ 102, 135; Jury § 7— jury selection — death penalty views — informing jury of death penalty in argument**

    In a first degree murder prosecution, the trial court erred in refusing to permit defendant (and the State) to interrogate prospective jurors concerning their views with reference to imposition of the death penalty upon one convicted of first degree murder and in refusing to permit the defendant, in his argument to the jury, to inform the jury that, under the law of this State, the prescribed punishment for first degree murder is death.

2. **Conspiracy § 6; Homicide § 21— conspiracy to rob — murder in perpetration of robbery — sufficiency of evidence of defendant's guilt**

    The State's evidence was sufficient for the jury on the issues of defendant's guilt of conspiracy to commit armed robbery and murder in the first degree where the trigger man in the shooting testified that he, defendant and three others conspired to rob a service station, that defendant was the principal planner of the robbery, that defendant transported the conspirators to a point near the service station in his wife's car where he let two conspirators out for the purpose of perpetrating the robbery, that the witness fatally shot an attendant at the station while attempting the robbery, and that the two perpetrators fled and were picked up by defendant and transported by him to their homes.

3. **Homicide § 4— homicide during robbery — first degree murder**

    A murder perpetrated in an attempt to commit robbery is murder in the first degree. G.S. 14-17.

4. **Conspiracy § 8; Criminal Law § 26; Homicide § 31— conviction of conspiracy to rob and murder in perpetration of robbery**

    While a charge of armed robbery was merged into an offense of murder committed in perpetration of the robbery, a charge of conspiracy to commit the armed robbery was not merged into the murder charge, and defendant was properly convicted of both conspiracy and murder.

**5. Criminal Law § 84; Searches and Seizures § 1— seizure without warrant — article in plain view — officer lawfully on premises**

The trial court in a murder prosecution did not err in the admission of a box of shotgun shells found by a police officer in the kitchen of the home of defendant's sister where the trial court found upon supporting evidence that officers went to the home with warrants for the arrest of defendant, his brother and two other persons, that defendant and his brother were found upstairs asleep in separate rooms, that the officers had information that one of the other persons for whom they had warrants might be physically present in the home, and that in looking for such other person an officer went to the door of the kitchen and inadvertently observed the box of shells in plain view in an open drawer.

**6. Indictment and Warrant § 13— denial of bill of particulars**

The trial court in a conspiracy to rob and homicide case did not abuse its discretion in the denial of defendant's motion for a bill of particulars where the State's main witness had testified in the prior trial of defendant's brother for the same offenses and defendant should have been fully aware of the theory of the State's case against him.

**7. Criminal Law §§ 75, 80— pretrial order to provide defendant's statements to counsel — statement not provided — good faith of solicitor — admission of statement**

In a homicide prosecution in which the court, pursuant to defendant's pretrial motion under G.S. 15-155.4, ordered the State to provide defense counsel with any written statement by defendant and with the name of any person to whom defendant gave any oral statement, the trial court did not abuse its discretion in permitting officers to testify as to an oral statement given by defendant of which defense counsel had not been advised prior to trial where the solicitor had no notice of the statement until after the trial was under way and he informed defense counsel thereof on the day before the statement was offered in evidence.

**8. Criminal Law § 75— statement in polygraph room — effect on admissibility**

The fact that defendant's statement to police, found by the court upon competent evidence to have been made voluntarily, was made in the polygraph testing room is irrelevant on the question of its admissibility.

**9. Criminal Law §§ 73, 89— reason for inconsistent testimony — threats by codefendant out of defendant's presence — admissibility**

Testimony by the State's main witness that he had given inconsistent testimony in the prior trial of a codefendant and had given the codefendant a signed statement that "what I am saying on the stand today is a lie" because he had been beaten and threatened by the codefendant and another while they were in jail awaiting the codefendant's trial was not hearsay and was properly admitted in defendant's trial although the threatening statements to the witness were not made in defendant's presence.

APPEAL by defendant from *Ervin, J.*, at the 26 November 1973 Session of MECKLENBURG.

Under indictments, proper in form, the defendant was convicted of murder in the first degree and of conspiracy to commit armed robbery. Upon the charge of murder, he was sentenced to death and upon the charge of conspiracy to commit armed robbery, he was sentenced to 10 years in the State's prison, less credit for time he was in jail pending trial.

The defendant was also indicted for armed robbery. The three cases were consolidated for trial. At the close of the State's evidence, a judgment of nonsuit was entered upon the charge of armed robbery, the defendant's motions for like judgments on the other two charges being denied. The defendant gave notice of appeal in the two cases in which sentences were imposed. Certiorari was granted to bring to this Court, prior to determination by the Court of Appeals, the appeal from the judgment in the conspiracy case and the two appeals were heard together.

Prior to the bringing of any prospective jurors into the courtroom, the trial court stated that it would not permit the State or the defendant, "in questioning the jurors or in the course of the trial to indicate in any way that the punishment for first degree murder upon the present case law in North Carolina is death." At the conclusion of all the evidence, prior to argument of counsel, the court directed that counsel not argue the question of the death penalty or show to the jury portions of certain exhibits containing reference to the death penalty. To each of these directions the defendant objected and excepted in due time. Each such direction of the court was complied with by counsel and the record discloses that at no time was any reference to the death penalty made in the presence of prospective jurors or in the presence of the empaneled jury.

The theory of the State's case was that the defendant, his brother, Anthony Carey, James Calvin Mitchell and two others, planned and conspired to rob with firearms the operators of a filling station, that the defendant, for the purpose of carrying out this design, transported, in his or his wife's automobile, Mitchell and another of the conspirators to a point near the filling station and there waited for their return, Mitchell and his companion went to the filling station and, in an unsuccessful attempt to accomplish the intended robbery, shot one of the operators, James Sloop, in the abdomen with a sawed-off shot-

gun, supplied to Mitchell by the defendant, and fled from the scene back to the automobile in which the defendant then transported them back to their homes, after they reported to him what had occurred at the filling station. The evidence of the State, if true, fully supports the theory of the State and the verdicts of the jury finding the defendant guilty both of the conspiracy and of the murder.

*Robert Morgan, Attorney General, and John R. B. Mathis, Assistant Attorney General, for the State.*

*Waggoner, Hasty & Kratt by John H. Hasty for defendant.*

LAKE, Justice.

[1]  It was clearly error for the trial judge to refuse to permit the defendant (and the State) to interrogate prospective jurors concerning their views with reference to the imposition of the death penalty upon one convicted of murder in the first degree, and also error to refuse to permit the defendant, in his argument to the jury, to inform the jury that, under the law of this State, the prescribed punishment for murder in the first degree is death. *State v. Anthony Douglas Carey,* 285 N.C. 497, 206 S.E. 2d 213, decided this day; *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817. Because of these errors there must be a new trial of the defendant. The jury not having been selected in accordance with the requirements of the law, there must be a new trial on the conspiracy charge as well as upon the murder charge.

[2]  The defendant's contention that his motion for judgment of nonsuit should have been allowed as to both charges has no merit as to either. In *State v. Fox,* 277 N.C. 1, 17, 175 S.E. 2d 561, we said: "[W]hen a conspiracy is formed to commit a robbery or burglary, and a murder is committed by any one of the conspirators in the attempted perpetration of the crime, each and all of the conspirators are guilty of murder in the first degree." See also: *State v. Anthony Douglas Carey, supra; State v. Bell,* 205 N.C. 225, 171 S.E. 50.

This is a companion case to *State v. Anthony Douglas Carey, supra,* the two defendants being brothers and alleged coconspirators. The evidence for the State concerning the conspiracy to rob and the fatal shooting of the filling station attendant was substantially the same in both cases. Reference

is made to our opinion in that case for a more complete narration of the facts. For the present, it is sufficient to state that the testimony of Mitchell, the trigger man at the shooting, is ample to support a finding that he, the two Carey brothers, Harold Givens and Antonio Dorsey conspired to rob Williams' Exxon Service Station; that this defendant—Albert Lewis Carey, Jr.—was the principal planner of the robbery; that, in his own or his wife's automobile, he transported all of the conspirators to a point near the filling station where he let Mitchell and Givens out for the purpose of perpetrating the planned robbery; that they went to the filling station and, in an attempt to carry out the plan, Mitchell fatally shot James Sloop, an attendant thereat; following the shooting, Mitchell and Givens fled and were picked up by this defendant and transported back to their homes in his automobile.

[3]  A murder perpetrated in an attempt to commit robbery is murder in the first degree. G.S. 14-17; *State v. Fox, supra.*

[4]  As the defendant contends, when the State proves another felony, as an element of first degree murder, such other felony is merged into the murder and may not be the ground for another, separate prosecution and punishment. *State v. Moore,* 284 N.C. 485, 202 S.E. 2d 169; *State v. Carroll,* 282 N.C. 326, 193 S.E. 2d 85; *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326. For this reason, the trial court properly allowed the motion for judgment of nonsuit upon the charge of armed robbery, under which the defendant, otherwise, could have been convicted of an attempt to commit armed robbery. This well settled principle of law does not, however, prevent the trial and conviction of the defendant both on the charge of first degree murder and on the charge of conspiracy to rob. The conspiracy is a separate offense from the attempt to rob. Conspiracy is a completed crime when it is formed, without any overt act designed to carry it into effect. *State v. Goldberg,* 261 N.C. 181, 202, 134 S.E. 2d 334; *State v. Brewer,* 258 N.C. 533, 539, 129 S.E. 2d 262; *State v. Davenport,* 227 N.C. 475, 494, 42 S.E. 2d 686. The conspiracy and the accomplishment or attempt to accomplish the intended robbery are separate offenses and the conspirators may be convicted of both and punished for both. *State v. Brewer, supra,* at p. 558. In the present case, the murder occurred in the perpetration of the attempt to rob. It is this felony, not the separate offense of conspiracy, which was merged into the charge of first degree murder.

Consequently, there was no error in the denial of the motion for judgment of nonsuit as to either charge, no error in the instruction to the jury that it might find the defendant guilty of conspiracy and also guilty of murder in the first degree, and no error in the imposition of the prescribed punishment for each offense.

[5] The defendant contends that the court erred in admitting into evidence a box of shotgun shells found by Officer Stroud in the kitchen of the defendant's home. We find no merit in this contention.

The court conducted a voir dire upon the defendant's motion to suppress this evidence. It found as facts: At 2 a.m. on 10 July 1973, ten police officers, under the command of Lieutenant Stroud, went to the residence of the sister of the defendant; that the officers had warrants for the arrest of this defendant, his brother, Anthony Douglas Carey, Harold Givens and Antonio Dorsey; these arrest warrants charged each of these individuals with murder and the purpose of the officers' going to the house was to arrest the Carey brothers on those warrants; at that time, the officers also had information indicating that Antonio Dorsey might be physically present in the residence and they also had the purpose of arresting him pursuant to the warrant so charging him; arriving at the residence, they knocked at the door and stated that they were looking for the Carey brothers and had warrants for their arrest; they were admitted to the residence by the sister of the defendant, whose residence it was, and advised by her that the brothers were upstairs asleep; the officers went upstairs, found the Carey brothers asleep in separate rooms, arrested both of them and searched the rooms in which they were arrested in an unsuccessful effort to find the shotgun used in the perpetration of the murder; Lieutenant Stroud then examined other parts of the house to determine whether Antonio Dorsey was present on the premises; returning downstairs he went to the door of the kitchen, he being the first officer to enter the kitchen; arriving at the door of the kitchen, he observed a drawer open and in the open drawer, he standing in the doorway, observed the box of shotgun shells, which he then took into his possession; at the time the shells were so discovered, the officer did not have any information that shotgun shells were in the house and he was not looking for these but was seeking the whereabouts of Antonio Dorsey; that his observance of the box of shells was inadvertent; that Lieu-

tenant Stroud was lawfully inside the residence pursuant to the arrest warrants and had a lawful right to be where he was when he observed the shotgun shells which were in plain view as he stood at the door of the kitchen.

The evidence on voir dire was ample to support these findings of fact, although there was conflicting evidence as to whether the shells were in plain view of one standing in the doorway and as to whether other officers had previously been into the kitchen. The findings of fact, being supported by the evidence on voir dire, are conclusive. *State v. Grant,* 279 N.C. 337, 182 S.E. 2d 400; *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481; Stansbury, North Carolina Evidence (Brandis' Revision), § 121a, p. 378. The box of shells having been in plain view of the officer as he stood where he had a right to be and having been observed by him inadvertently, not as the result of a search therefor, there was no violation of the defendant's constitutional rights in the officer's taking them into his possession, or in their introduction into evidence. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed. 2d 1067. See also: *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726, the plurality opinion of Justices Clark, Black, Stewart and White; Stansbury, North Carolina Evidence (Brandis' Revision), § 121a, p. 372.

[6] The defendant, prior to trial, moved for a bill of particulars, which motion was denied. In this there was no error. The allowance of a motion for a bill of particulars rests in the sound discretion of the trial court. G.S. 15-143; *State v. Overman,* 269 N.C. 453, 468, 153 S.E. 2d 44; *State v. Vandiver,* 265 N.C. 325, 144 S.E. 2d 54; *State v. Scales,* 242 N.C. 400, 87 S.E. 2d 916. The trial of Anthony Douglas Carey had occurred prior to the trial of this defendant. There also, the testimony of Mitchell was the foundation of the State's case. Thus, at the time the present defendant was placed on trial, he should have been fully aware of the theory of the State's case against him.

[7] Prior to the commencement of the trial, the defendant, pursuant to G.S. 15-155.4, moved that the State be required to make available to the defendant's counsel exhibits proposed to be used by the State at the trial and copies of all written statements or summaries of oral statements of the defendant to the solicitor, the police or other persons. Such order was entered, including the following:

"9. The State shall inform the defendant's attorney whether or not the defendant has given any statement

to the police or Solicitor and furnish a copy of any such written statement to the defendant's attorney or the name of any person to whom any oral statement may have been given."

The solicitor, prior to trial, responded:

"9. The State provided the defense attorney a copy of all statements by the defendant and a summary of all oral statements given by the defendant."

After the trial was in progress, the solicitor learned that the defendant, having been given the full Miranda warning, signed a waiver of his constitutional rights to which such warning relates and made an oral statement to the police officer in charge of the polygraph testing room. When the solicitor proposed to offer such statement in evidence, defendant's counsel objected and the judge conducted a voir dire in the absence of the jury. Upon such voir dire the solicitor and the defendant's counsel advised the court that, at approximately 6:00 p.m. on the previous day, the solicitor brought these matters to the attention of the defendant's counsel, the solicitor having had no knowledge of them until the night before that.

Evidence for the State on the voir dire was to the following effect: The defendant, after having been given the Miranda warning and having signed the waiver of such rights, consented to the taking of a polygraph test and was carried to the room used for such tests. Proceedings introductory to the taking of a polygraph test were begun but the taking of the test was discontinued and the idea was abandoned when the officer in charge of the test room found the defendant was under the influence of drugs and not in condition to take the test. The following day he was taken back to the polygraph room for such a test, having again been given the Miranda warning of his constitutional rights and having again waived those rights in writing, including the right to have an attorney present at the taking of the polygraph test. Upon arrival in the polygraph test room the defendant stated to the officer in charge thereof that he did not wish to take a polygraph test but desired to make a statement to that officer. Accordingly, no polygraph test was taken. While still in the polygraph testing room the defendant told the officer in charge thereof that he, the defendant, had planned, with Dorsey, Givens and Mitchell, to rob the filling station, that he had transported these three men to the vicinity

of the filling station in his wife's car and there let them out of the car. These statements were overheard by two other officers who had given the defendant the above mentioned warnings and had brought him to the polygraph testing room, after which they had gone into an adjoining room where they could observe the proceedings through a two-way mirror and hear what was said. The defendant had been advised of the existence of such a room and its facilities, but did not actually know the two officers were therein.

The defendant testified on the voir dire that he made no such statement to any officer.

At the conclusion of the voir dire, in the absence of the jury, the court made detailed findings of fact, including findings that the defendant made the statement, that it was made voluntarily and spontaneously and was not the result of or induced by any questioning of the defendant, that it had no connection with the polygraph examination and that it was not tainted by anything done in connection with the activities of the officer in charge of the polygraph testing room.

Thereupon the court concluded that the evidence as to the statement was competent but directed that the State should not, on direct examination, elicit any testimony indicating that the statement occurred in connection with an attempt to conduct a polygraph examination.

Thereupon, in the presence of the jury, the officer in charge of the polygraph testing room testified that the defendant made the said statement to him and the other two officers testified that they overheard it. On direct examination of these witnesses no reference was made to a polygraph test or to the fact that the statement was made in the polygraph testing room or that the officers had any duties in connection with such room or tests. On cross-examination by the defendant's counsel it was developed that the statement was made in the polygraph testing room. On redirect examination it was developed that, at the time of making these statements, the defendant had said that he did not care to take the polygraph test but wished to make a statement to the officer, this being the statement in question.

We perceive no error in the ruling permitting the police officers to testify as to the statement so made by the defendant.

G.S. 15-155.4 provides that, for good cause shown, the judge assigned to hold the courts of the district wherein the

case is pending, or the resident superior court judge of the district, shall direct the solicitor to produce for inspection, examination, copying and testing by the defendant or his counsel "any specifically identified exhibits to be used in the trial of the cases sufficiently in advance of the trial to permit the accused to prepare his defense." This statute does not specifically declare inadmissible any exhibit or any oral statement not so exhibited or called to the attention of counsel for the defendant. The expressed and clear purpose of the statute is to give to the defendant's counsel notice of such matters in sufficient time to avoid his being taken by surprise. *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664.

In the present instance, it is not denied that the solicitor has acted in good faith, he, himself, having had no notice of the statement in question until after the trial was under way and, having informed the defendant's counsel thereof on the day before the statement was offered in evidence. Under these circumstances, the admission of such evidence lies in the sound discretion of the trial court.

[8]  In *State v. Foye,* 254 N.C. 704, 120 S.E. 2d 169, this Court held that the results of a polygraph test are not admissible in evidence to establish the guilt or innocence of one accused of a crime. That rule has no application to the present case. The testimony concerning the statement made by the defendant to the officer in charge of the polygraph testing room was not the result of any polygraph test nor was it made in the course of the taking of a polygraph test. The fact that this statement, found by the court upon competent evidence on voir dire to have been made voluntarily, was made in the polygraph testing room is irrelevant on the question of its admissibility. Furthermore, it was the defendant, not the State, who brought to the attention of the jury the fact that the statement was made in that room.

[9]  Mitchell, the key witness for the State, testified in detail as to the conspiracy, the attempt to carry out the planned robbery and the fatal shooting in the course of such attempt. He then testified that he had previously testified at the trial of Anthony Douglas Carey and the later trial of Harold Givens and had not "testified the same thing both times." On cross-examination, he testified that in the trial of Harold Givens, one week earlier, he had testified directly contrary to his present testimony and that he had given to Harold Givens a signed statement that "what I am saying on the stand today is a lie." On

redirect examination, over objection by the defendant, Mitchell testified that his inconsistent testimony in the previous trial of Givens and his said signed statement were the result of his having been beaten and threatened by Givens and Dorsey while they were all together in jail awaiting the trial of Givens following the trial of Anthony Douglas Carey. The ground of the defendant's objection was that the threatening statements to Mitchell were not made in the presence of the defendant. There is no merit in this objection. The testimony at this trial by Mitchell was not hearsay. It was not offered to show the truth of the threatening statements to him by Givens and Dorsey but to show the fact of those statements having been made and the bearing of that fact upon his inconsistent testimony at the three trials. This was his own in-court testimony as to why he had testified inconsistently at a former trial of another defendant. Mitchell was, of course, subject to cross-examination by this defendant in this trial concerning this and other aspects of his present testimony. We have examined other contentions of the defendant concerning the admissibility of evidence and find no merit therein. No purpose would be served by a discussion of these matters in detail.

For the error of the trial court in the matter of the interrogation of prospective jurors and in the limitation of the argument of defendant's counsel, there must be a new trial, but there is no merit in the other contentions presented by the defendant on this appeal.

New trial.