593 F.2d 553
 UNITED STATES of America, Appellee,
v.
Richard Jack PHILLIPS a/k/a "R", Appellant.
UNITED STATES of America, Appellee,
v.
Terry SPEECH, a/k/a "T", Appellant.
UNITED STATES of America, Appellee,
v.
Crystal OVERTON, a/k/a "C", Appellant.
UNITED STATES of America, Appellee,
v.
Roberta SHAW, a/k/a "Ro", Appellant.
UNITED STATES of America, Appellee,
v.
Marzellus WILSON, a/k/a "M", Appellant.
UNITED STATES of America, Appellee,
v.
Ernest L. BODIFORD, a/k/a "E-Man", a/k/a "E", Appellant.
UNITED STATES of America, Appellee,
v.
Charles C. JONES, Appellant.
 Nos. 77-2353 to 77-2359.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1978.
Decided Dec. 6, 1978.
Certiorari Denied May 14, 1979.
See 99 S.Ct. 2169, 2170.
 
 Roger E. Zuckerman, Washington, D. C., for appellant Wilson.
 Orie Seltzer, Washington, D. C., for appellant Speech.
 Leslie L. Gladstone, Baltimore, Md., for appellant Overton.
 Robert E. Shepherd, Jr., Richmond, Va., for appellant Jones.
 Philip M. Sutley, Baltimore, Md., on brief, for appellant Phillips.
 John G. Turnbull, II, Towson, Md., on brief, for appellant Shaw.
 Richard Karceski, Baltimore, Md., on brief, for appellant Bodiford.
 Robert B. Schulman, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., and Peter O. Mueller, Asst. U. S. Atty., Washington, D. C., on brief), for appellee United States of America.
 Before BRYAN, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.
 BRYAN, Senior Circuit Judge:
 
 
 1
 Convicted in the United States District Court for Maryland, July 28, 1977, of conspiring to manufacture, possess, distribute and dispense heroin and cocaine, and also of related substantive offenses, including illegal interstate travel, all in violation of the Federal statutes, 21 U.S.C. §§ 841(a)(1), 843(b), 846 (1970) and 18 U.S.C. § 1952 (1970), defendants Richard Jack Phillips, Terry Speech, Crystal Overton, Roberta Shaw, Marzellus Wilson, Ernest L. Bodiford and Charles C. Jones, now appeal. We affirm.
 
 
 2
 As condensed by their counsel, the "essence of the charged violations" is embodied in the conspiracy count. We review each issue as it is presented and pressed by appellants' briefs. The criminal operations imputed to the appellant-defendants extended from January 1974 through March 16, 1977, and from Maryland to California, including the District of Columbia and Michigan by the way.[1]
 
 I.
 
 3
 For pre-indictment investigation, Special Agents of the Federal Drug Enforcement Administration (D.E.A.) obtained three authorizations to intercept telephone communications pursuant to 18 U.S.C. § 2518 (1970). The first was on May 21, 1976, in Ypsilanti, Michigan, for phone numbers 313/485-2562 and 313/415-2451 at Lake in the Woods Apartments; the next was June 21, 1976, in Hillcrest Heights, Maryland, at 3412 Curtis Drive, for phone numbers 301/899-3549 and 301/899-3483; and the last tapped was in Washington, D. C., on June 21, 1976, phone number 202/678-0521, at 2338 24th Street, S.E., which connected with those tapped in Hillcrest Heights. The initial target of the appellants is the validity of these authorizations and the consequent interceptions, particularly those sanctioned for telephone 301/899-3483, at 3412 Curtis Drive, Hillcrest. The contention is that the applications therefor did not meet the prerequisites of the statute, 18 U.S.C. § 2518.
 
 
 4
 To begin with, appellants challenge the application for failing to disclose probable cause for tapping the 301/899-3483 phone in Hillcrest Heights, as demanded by section 2518(1)(b) of 18 U.S.C. They further charge that none of the three applications demonstrated that other investigative procedures had been tried and failed, or why they should not be tried, Id. § 2518(1)(c). Hence, conclude appellants, the interceptions were invalidly authorized and their use deprived the appellants of their Fourth Amendment guarantees. Our reading reveals that in every instance the issuing judge was rightly persuaded of probable cause for the taps, as well as that usual and customary probing efforts would not suffice. Agent Story addressed the courts on all three occasions. Each of the applications complies with the exactions of the statute.
 
 II.
 
 5
 Upon return of the sealed indictment in the Maryland Federal Court on March 16, 1977, Government Agents armed with arrest warrants proceeded to the addresses frequented by the indicted parties. Searches conducted by agents endeavoring to execute the warrants are vigorously attacked by occupants of the premises and possessors of the seized items. The entries started at 8219 Redlands Street, Apartment No. 1, Los Angeles, California, in the early morning of March 18, 1977. Appellants Terry Speech and Crystal Overton opened the door in response to the Agents' knocks and were immediately taken into custody under the arrest warrants. Although told that no one else was in the apartment, one Agent nevertheless searched the place. In this exploration he saw on the night stand in the master bedroom a closed address book, described as having a blue cover without any writing on the outside of it, seemingly a telephone directory. Without express consent of anyone he opened it and found a list of names with telephone numbers opposite. On leaving he took it with him.
 
 
 6
 Speech and Overton with Phillips unsuccessfully moved to suppress the use of the book as evidence at trial. The motion was not well grounded. The arrests were valid and the Agents looked around the apartment only to ascertain whether Phillips, who lived there, or other indicted persons were present in order to assure their own safety and make additional arrests. The Agents, therefore, had a right to be where they were. The book was in "plain view" and thus subject to seizure at the time of the arrests. Coolidge v. New Hampshire, 403 U.S. 443, 465-67, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
 
 
 7
 On the same day, March 18, 1977, about 8 a. m., the Agents moved on to the apartment at 2268 West 20th Street, Los Angeles, again armed with arrest warrants, looking for those under indictment, particularly Phillips and one Wagner. These premises were a known gathering place or haunt of the conspirators. The D.E.A. established this information through previous observations over more than a year. This property had also been under surveillance during the execution of search warrants prior to the return of the indictment. Telephone toll records, too, confirmed the use of the 20th Street apartment by the conspirators.
 
 
 8
 When the Agents reached this apartment, they sought entrance by rapping on the door, announcing their official capacity and stating their desire to enter. There was no response. Agents placed at the rear of the apartment heard a noise coming from the second floor. Whereupon they looked around for anyone who might be in sight. These efforts failing, they forced their way through the back door, all the while assuring that no one left the house.
 
 
 9
 The noise from the second floor, the Agents later discovered, was from a radio. No one was found in the apartment, and no search was made for evidence. While looking for people in the apartment, however, one of the Agents saw a telephone address book lying in clear view on a television stand. He opened it and took it away with him, in the belief it might have some evidential value.
 
 
 10
 At trial, the court denied defendants' motion for suppression of this book as evidence. This is made a foremost point on appeal. We think that the trial judge was sound in his ruling.
 
 
 11
 Contrary to appellants' arguments, we hold that although not carrying a search warrant, the Agents were entitled to force their way into the apartment. As heretofore noted, the premises provided a regular rendezvous for the defendants to use in furtherance of their unlawful activities. The Agents sensed and were persuaded that someone was within but deliberately declining to answer the calls and knocking of the officers, because he or she was a member of the suspected "family" of offenders. Emanation of a noise from the second floor strengthened their conviction of the presence of someone in the apartment. The Agents were knowledgeable in the ways and wiles of narcotics violators.
 
 
 12
 With this predicate of facts, the Agents were entitled to obtain entry, especially when armed with arrest warrants, despite the absence of a search warrant.
 
 
 13
 While not identical with the situation at hand, clear precedent for this proposition is found in Rodriguez v. Jones, 473 F.2d 599, 606 (5th Cir.), Cert. denied, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). On the point the Court said:Force may be used to enter a dwelling . . . and although the person sought is not in the dwelling the actor is privileged to use force if he Reasonably believes him to be there and enters in the exercise of a privilege to make a criminal arrest under a valid warrant. (Accent added.)
 
 
 14
 As reinforcing this thesis, the Fifth Circuit cites, Inter alia, Restatement (Second) of Torts. This commentary provides the following:
 
 
 15
 § 204. Entry to Arrest for Criminal Offense
 
 
 16
 The privilege to make an arrest for a criminal offense carries with it the privilege to enter land in the possession of another for the purpose of making such an arrest, if the person sought to be arrested is on the land or If the actor reasonably believes him to be there. (Citation omitted.)
 
 
 17
 § 206. Forcible Entry of Dwelling to Arrest, Recapture, Prevent Crime, and Related Situations.
 
 
 18
 (2) Although the person sought is not in the dwelling, the actor is privileged to use force as stated in subsection (1) If he reasonably believes him to be there, and enters in the exercise of a privilege
 
 
 19
 (a) to make a criminal arrest under a warrant valid or fair on its face . . . . (Citations omitted and accents added.)
 
 
 20
 In the Appendix, Reporter's Notes § 206, comment G at 225, are these additions:
 
 
 21
 American decisions, however, recognize that there is such a privilege in an officer armed with a warrant who seeks to make a criminal arrest, and who Reasonably believes that the person sought is in the dwelling. . . .
 
 
 22
 A privilege to enter the dwelling of the person sought to be arrested Upon reasonable belief that he is there is generally upheld. . . . (Citations omitted and accents added.)
 
 
 23
 Surely the instant conduct of the Agents was within these permissive bounds.
 
 
 24
 In our judgment the Agents were lawfully within the apartment, thus endowing them with the limited right of seizure exercised in the taking of the book. As stated in Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968):
 
 
 25
 It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. (Citations omitted.)
 
 
 26
 The District Court's denial of suppression of the book at trial was clearly correct. It is posited in Coolidge v. New Hampshire, 403 U.S. at 465, 467, 91 S.Ct. at 2037, 2039, in this way:
 
 
 27
 Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but By one of the recognized exceptions to the warrant requirement, the seizure is also legitimate.
 
 
 28
 The "plain view" doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial intrusion is justified by a warrant or By an exception such as "hot pursuit" or search incident to a lawful arrest, or by an Extraneous valid reason for the officer's presence. (Accent added.)
 
 
 29
 In any event, the evidence of the appellants' guilt of the conspiracy is overwhelming. Mindful of the admonition noted in Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) not to attach too much weight to "overwhelming evidence" of guilt, we hold that appellants' "substantial rights" were not abridged. Any error which may have occurred in admitting the seized book was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fed.R.Evid. 103(a).
 
 
 30
 The third search and seizure, likewise made March 18, 1977, was executed at 2483 Lake in the Woods Boulevard, Apartment 788, Ypsilanti, Michigan. Experiencing no difficulty in admittance, they apprehended appellants Roberta Shaw and Richard J. Phillips under arrest warrants. At this time the Agents picked up two black books, lying open to view, and carried them away. For reasons already expounded for refusal of the Court to suppress the book seized in the first incident, on March 18, 1977, at 8219 Redlands Street, we approve the District Judge's refusal to suppress these two books.
 
 III.
 
 31
 Appellants assert error in the reception of the testimony of Winifred R. Coley, described as an "insider" conspirator. She gave witness to the meaning of the cant of the conspirators, as recorded through the telephone interceptions. We see her qualified to do so because of her association with those trading in narcotics, and, particularly, with those involved in the instant drug transactions. Letting in this proof did not violate judicial discretion. Fed.R.Evid. 701 and 702.
 
 IV.
 
 32
 Appellants lay error to the reception into evidence of a quantity of heroin taken from one Delano Harris, on April 18, 1976, at the Detroit Metropolitan Airport in Michigan. He died before trial, and the only question now is whether the other appellants had standing to object to the reception of this evidence. We think they did not.
 
 
 33
 Harris was among the conspirators; the proof abundantly revealed his complicity in the intrigue. Without doubt, he was carrying the heroin for his complotters. Although there may have been some question of probable cause for his arrest and the search of his baggage, wherein the heroin was discovered, he is not the one complaining about it. Harris' conspirers lack standing to challenge the search as Fourth Amendment rights are personal and "may not be vicariously asserted." Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Only the victim of the search is aggrieved by its illegality. United States v. Crowell, 586 F.2d 1020 (4th Cir. 1978); United States v. Hunt, 505 F.2d 931, 938-39 (5th Cir. 1974), Cert. denied, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975). To have established standing appellants would have to have shown their presence or interest in the premises or that they were charged with an offense that includes possession as an essential element. Brown v. United States, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Here, the search occurred in an airport while Harris was travelling alone and the appellants were not convicted of possessing the drugs he carried. See United States v. Hutchinson, 488 F.2d 484, 492 (8th Cir. 1973), Cert. denied, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974).
 
 V.
 
 34
 Appellant Marzellus Wilson protests that he should have been granted a judgment of acquittal, on motion, of the conspiracy charge and illegal travel the latter under count twelve between Virginia and Maryland, on June 16, 1976, to distribute heroin and cocaine. No fault is perceived in the refusal to allow the motion for this relief in either instance. Even though no physical evidence of narcotics was adduced under these accusations, there was ample incriminating parol testimony of his confederation with the other proven conspirators. This proof apparently was given credence by the jury, as they might do. Looking at this evidence in its most favorable light to the prosecution, as we must, it plainly convicts Wilson of both conspiracy and illegal travel.
 
 VI.
 
 35
 Denial of appellant Bodiford's Sixth Amendment privilege to be confronted with the witnesses against him, he pleads, resulted from undue curtailment of his cross-examination of the witness, Ms. Coley. She, it will be remembered, interpreted the vernacular in the intercepted conversations of those criminally handling narcotics. His contention is fiberless. The record discloses that wide scope was extended Bodiford's counsel in cross-examination, restrained only when it became repetitive or irrelevant. At all events, the rulings were harmless, for Coley had not testified to Bodiford's detriment. We find no fault here in the Court's ruling.
 
 VII.
 
 36
 Charles C. Jones, as well as concurring in that of his co-appellants, presents a supplemental brief of his own, seeking reversal of his conviction of conspiracy. Therein error is charged to the District Court's rulings on the points following:
 
 
 37
 (1) The search of the premises at 7035 Fleury Way in Pittsburgh, and his arrest there, on June 1, 1976, as a conspirator were illegal. We do not agree. The warrant for the search, the seizure of physical evidence, and the ensuing arrest were in no degree defective. There were several affidavits sustaining the warrant and none deficient in any requisite.
 
 
 38
 Nor was there defect in the ruling of the trial judge refusing to suppress the detective's identification of Jones' voice in a recorded wire tap. Prefatory evidence established acquaintance enough with Jones and his voice by the detective, rendering his opinion worthy of consideration. Also, his familiarity with the voice excluded any suspicion of coaching or suggestiveness. In any case, the identification procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. at 384, 88 S.Ct. at 971.
 
 
 39
 Likewise free of error was the denial of Jones' motion for a judgment of acquittal. This ruling was called for by the police officers' observance of Jones' association with persons known to be narcotic handlers, telephone toll records linking him to the other conspirators, and authentic ledger sheets showing Jones' receipt of heroin. Viewed in the light most favorable to the Government, the evidence was sufficient to permit the jury to find Jones guilty of the conspiracy charge beyond a reasonable doubt. See United States v. McCoy, 518 F.2d 1293, 1294 (4th Cir. 1975).
 
 
 40
 The judgments on appeal will not be disturbed.
 
 
 41
 Affirmed.
 
 
 
 [1]
 The indictment was in 26 counts with 21 persons accused