STATE OF NORTH CAROLINA v. JOHNNY ROBERT COLBERT

No. 8323SC346

(Filed 3 January 1984)

1. Searches and Seizures § 6— entering house with arrest warrant for two men—looking for second man—marijuana in plain view—properly seized

The trial court properly denied defendant's motion to suppress evidence of marijuana seized from his premises where the officers had obtained arrest warrants for two men, including defendant's brother, and upon arriving at defendant's trailer where the two men were supposed to be found, the officers knocked and heard someone inside say "come in"; the officers entered and identified defendant's brother, whom they immediately arrested; a subsequent search of the brother and two other men present disclosed at least one loaded pistol; two officers walked from the kitchen area into a back bedroom; and one of the officers testified that as he was looking for the other man named in the warrant, he saw in a bedroom closet a bag containing green vegetable matter which appeared to be, and subsequently proved to be, marijuana. The officers were justified in looking through the trailer for the second suspect and the marijuana was admissible under the plain view doctrine.

2. Jury § 6— voir dire of jury panel in absence of counsel—no prejudicial error

Even assuming that there is a right to the presence of defense counsel during the State's voir dire of the jury, that the court erred in proceeding in the absence of defense counsel, and that the error was of constitutional dimension, the error, if any, was nevertheless harmless beyond a reasonable doubt. Defense counsel, upon arrival, had full and fair opportunity to examine the panel which had been approved by the State. G.S. 15A-1443(b).

Judge BECTON dissenting.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 19 February 1982 in Superior Court, WILKES County. Heard in the Court of Appeals 17 November 1983.

Defendant appeals from a judgment of imprisonment, a portion of which was suspended, entered upon his conviction of felonious possession of marijuana.

*Attorney General Edmisten, by Special Deputy Attorney General Ann Reed, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Malcolm R. Hunter, Jr., for defendant appellant.*

WHICHARD, Judge.

[1]  Defendant contends the court should have suppressed, on Fourth Amendment grounds, evidence of marijuana seized from his premises. The pertinent facts are as follows:

Officers had obtained arrest warrants for two men, including defendant's brother, and the complainant had indicated that the men would be at defendant's trailer. Upon arrival at defendant's trailer, the officers knocked and heard someone inside say "Come in." They entered and identified defendant's brother, whom they immediately arrested. A subsequent search of the brother and two other men present disclosed at least one loaded pistol.

Two officers walked from the kitchen area into a back bedroom. One of the officers testified on voir dire that he was looking for the other man named in the warrants. In the course of this walkthrough he saw in a bedroom closet a bag containing green vegetable matter, which appeared to be, and subsequently proved to be, marijuana.

The officers had seen someone run away when they approached the trailer. They subsequently found defendant outside and arrested him.

Defendant contends, citing *Steagald v. United States*, 451 U.S. 204, 68 L.Ed. 2d 38, 101 S.Ct. 1642 (1981), that because the officers possessed only arrest warrants, and not a search warrant, they could not lawfully proceed beyond the kitchen area where they found his brother, who was the subject of one of the arrest warrants. *Steagald* requires that, to *enter* one person's residence in search of another for whom an arrest warrant is outstanding, officers must either possess a search warrant or meet one of the familiar exceptions to the warrant requirement, *viz*, consent or exigent circumstances. *Id.* at 211, 68 L.Ed. 2d at 45, 101 S.Ct. at 1647. The Court there stated: "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 212, 68 L.Ed. 2d at 45, 101 S.Ct. at 1647 (citing *Payton v. New York*, 445 U.S. 573, 590, 63 L.Ed. 2d 639, 653, 100 S.Ct. 1371, 1382 (1980)).

Here, however, defendant does not contest the validity of the *initial entry* into his trailer. The trial court found that an officer

"went to the door of [defendant's] trailer and knocked and a voice from the inside said, 'Come in.' " It concluded "that the officers had a right to knock on the trailer; [and] that upon being invited in, they had a right to go in the trailer." Defendant has not excepted to the foregoing finding and conclusion. The finding thus is binding on appeal. *Schloss v. Jamison,* 258 N.C. 271, 275, 128 S.E. 2d 590, 593 (1962); *Anderson Chevrolet/Olds v. Higgins,* 57 N.C. App. 650, 653, 292 S.E. 2d 159, 161 (1982). It supports the conclusion as to the consensual nature of the initial entry, thus bringing it within one of the "special situations" in which a search warrant is not required. *Steagald, supra,* 451 U.S. at 211, 68 L.Ed. 2d at 45, 101 S.Ct. at 1647.

Defendant does except, however, to the conclusion "that after finding one of the persons that they had an arrest warrant for, the officers were justified in looking through the trailer for the second suspect." He thus presents an issue which exceeds the scope of *Steagald.*

Most courts which have faced this issue have approved walkthroughs of the entire premises at which an arrest has occurred. *See* 1 W. Ringel, Searches & Seizures, Arrests and Confessions § 12.6(a) (1983). "Such a walkthrough is reasonable when its purpose is to locate any other persons who are present on the premises who may pose a threat to the police." *Id.* at 12-28 to -28.1. Evidence in plain view during the course of such a walkthrough is subject to seizure under the plain view doctrine. *Id.* "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States,* 390 U.S. 234, 236, 19 L.Ed. 2d 1067, 1069, 88 S.Ct. 992, 993 (1968); *see also State v. Rigsbee,* 285 N.C. 708, 712-15, 208 S.E. 2d 656, 659-61 (1974).

Thus, in *United States v. Phillips,* 593 F. 2d 553 (4th Cir. 1978), *cert. denied sub nom. Speech v. United States,* 441 U.S. 947, 60 L.Ed. 2d 1050, 99 S.Ct. 2169 (1979), officers with arrest warrants entered an apartment and arrested two occupants who opened the door in response to their knocks. Although told that no one else was present, one officer nevertheless searched the apartment. In the course of this search he saw incriminating evi-

dence which he seized and which defendants sought to suppress at trial.

The court found no error in admission of the evidence. It stated that the arrests were valid, and that the officers "looked around" only to ascertain whether a third occupant of the premises or other indicted persons were present "in order to assure their own safety and make additional arrests." 593 F. 2d at 556. It concluded: "The [officers], therefore, had a right to be where they were. The [evidence] was in 'plain view' and thus subject to seizure at the time of the arrests." *Id.*

In *State v. Carey*, 285 N.C. 509, 206 S.E. 2d 222 (1974), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1209, 96 S.Ct. 3209 (1976), officers entered a residence with consent and arrested two murder suspects. After the officers searched the rooms in which the suspects were found, one of them examined other parts of the house in search of a third suspect. While doing so, he observed a box of shotgun shells, which he took into his possession. Our Supreme Court held that the box was in plain view and the officer was where he had a right to be. It thus found no error in admission of the box into evidence.

Defendant has not excepted to the finding here that after an officer placed his brother under arrest, "he then walked to the back of the trailer looking for the other person for whom he had an arrest warrant." The finding is thus binding on appeal, *Anderson Chevrolet/Olds, supra;* and it establishes, as the purpose of the walkthrough, a search for the other suspect. Pursuant to the foregoing authorities, it thus supports the conclusion to which defendant excepts, *viz*, "that after finding one of the persons that they had an arrest warrant for, the officers were justified in looking through the trailer for the second suspect."

The reasonableness of the conclusion is further supported by evidence that the officers had information that two persons named in the arrest warrants would be at defendant's trailer. They found and arrested one of the persons there. When they searched the person arrested and the other two men present, they discovered at least one loaded pistol. These circumstances indicate that a walkthrough of the premises was justified, both for the officers' protection and for the purpose of seeking the other person named in the warrants. Since the officers who con-

ducted the walkthrough were thus where they had a right to be when they discovered the marijuana in plain view, the marijuana was admissible under the plain view doctrine.

We thus hold that the court did not err in denying defendant's motion to suppress. This holding renders immaterial the question of the validity of defendant's subsequent consent to a search of his premises.

[2] Defendant further contends the court committed prejudicial error in allowing the State to conduct its voir dire of the jury panel in the absence of his counsel. The record indicates that defendant was present, but that his retained counsel had been in another county and had arrived some fifteen to twenty minutes after jury selection commenced. The State had, by that time, passed on the panel. Defendant argues that he was thereby denied effective assistance of counsel.

A defendant in a criminal trial has the right to be present during selection of the jury. *Lewis v. United States,* 146 U.S. 370, 375-76, 36 L.Ed. 1011, 1014, 13 S.Ct. 136, 138 (1892); *State v. Hayes,* 291 N.C. 293, 297, 230 S.E. 2d 146, 148-49 (1976); *State v. Shackleford,* 59 N.C. App. 357, 358, 296 S.E. 2d 658, 659 (1982). Defendant was present during jury selection here.

Neither defendant nor the State has cited authority establishing a right to presence of defense counsel during such selection. Assuming, without deciding, that such a right exists, that the court erred in proceeding in the absence of defense counsel, and that the error is of constitutional dimensions, we nevertheless find the error, if any, harmless beyond a reasonable doubt. G.S. 15A-1443(b). Defense counsel, upon arrival, had full and fair opportunity to examine the panel which had been approved by the State. The record does not reveal any denials of defense challenges to prospective jurors, or that the jury might in any way have been biased against defendant, or that defendant had any basis whatever for dissatisfaction with the jury as constituted. In light of the evidence presented at trial, which we have held properly admitted, we are satisfied beyond a reasonable doubt that the error, if any, did not contribute to defendant's conviction. *Chapman v. California,* 386 U.S. 18, 23, 17 L.Ed. 2d 705, 710, 87 S.Ct. 824, 827, *reh'g denied,* 386 U.S. 987, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967). While the practice of proceeding in the

absence of defense counsel is not approved, we hold that on this record it did not constitute prejudicial error warranting a new trial.

No error.

Judge HEDRICK concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

Considering that (a) the right to counsel is among the most closely guarded of all trial rights, *State v. Thacker*, 301 N.C. 348, 271 S.E. 2d 252 (1980); (b) waiver of right to counsel will not be presumed from a silent record, *State v. Coltrane*, 307 N.C. 511, 299 S.E. 2d 199 (1983); and (c) jury selection is one of the most important parts of the trial, I find the trial court's action in allowing the prosecutor to question and pass on the jury in the absence of defendant's counsel so prejudicial as to warrant a new trial. In my view, the trial court's action deprived the defendant of his right to effective assistance of counsel during a critical stage of a criminal trial; it improperly placed more emphasis on the expedient disposition of cases than on the effective protection of defendant's rights.

The facts in this case compel a new trial. Defendant was represented by retained counsel of his choice. Defendant's attorney resided in Yadkin County; defendant's case was tried in Wilkes County. The case was called for trial in the middle of winter, February 19, 1981. The court had been informed that defendant's attorney was on his way to court at the time it ordered jury selection to begin.

The law compels a new trial. The peremptory challenge is "one of the most important of the rights secured to the accused." *Pointer v. United States*, 151 U.S. 396, 408, 38 L.Ed. 208, 214, 14 S.Ct. 410, 414 (1894). "The denial or impairment of the right is reversible error *without a showing of prejudice*. [Citations omitted.] 'For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose.' " *Swain v. Alabama*, 380 U.S. 202, 219, 13 L.Ed. 2d

759, 772, 85 S.Ct. 824, 835 (1965) (quoting *Lewis v. United States*, 146 U.S. 370, 378, 36 L.Ed. 1011, 1014, 13 S.Ct. 136, 139 (1892) (emphasis added). Further, this Court, the Supreme Court of North Carolina, and the United States Supreme Court have recognized the importance of jury selection. A defendant has a right to be present during the entire selection of the jury. *Lewis v. United States; State v. Hayes*, 291 N.C. 293, 230 S.E. 2d 146 (1976); and *State v. Shackleford*, 59 N.C. App. 357, 296 S.E. 2d 658 (1982). Indeed, in *Shackleford*, this Court held that the defendant was entitled to a new trial because his attorney, without objecting, conducted the jury selection while defendant was not in court. This case presents the "flip side" of the situation facing the *Hayes* and *Shackleford* courts — the defendant was personally present, but without counsel. If jury selection is so important as to require the defendant's presence, then I believe it equally important to have defendant's counsel present. Compare *State v. Coltrane*, in which the order revoking defendant's probation was reversed because defendant's attorney was not present at the probation revocation hearing.

Separate and apart from the facts and law which, in my view, compel a new trial, are the practical reasons why defendant's counsel should be present during jury selection. A defendant needs counsel not only to speak for him in court, but also to observe and protect defendant from the sometimes intentional, but more often unintentional, improprieties that would adversely affect defendant's right to a fair trial. Now, I realize that there is no record of what the prosecutor or the potential jurors said, but that is no reason to assume that the jury selection procedure was "harmless." The fact that there is no record points out that the uncounseled defendant obviously did not know that the jury selection proceeding could have been recorded. *See* N.C. Gen. Stat. § 15A-1241(b) (1978).

The following quote is instructive:

While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. [Citation omitted.] It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt

to conceive upon the bare looks and gestures of another. . . .'

*Swain,* 380 U.S. at 220, 13 L.Ed. 2d at 772, 85 S.Ct. at 836 (quoting *Lewis,* 146 U.S. at 376, 36 L.Ed. at 1014, 13 S.Ct. at 138). The practical view of human nature set forth in *Lewis* in 1892 is still valid today.

It is not uncommon for trial judges to be inattentive, or even to absent themselves from the courtroom, during jury selection. The trial lawyer who views jury selection as the most important part of the trial does not enjoy that luxury. The trial lawyer, at least on a subconscious level—and without regard to what has been labeled scientific jury selection techniques—evaluates jurors not only on what is said, but also on nuances and on how and when something is said. The manner in which jurors respond to opposing counsel's questions on *voir dire* is as important as the manner in which jurors respond to the questioning attorney. Was the juror too hesitant? Too eager? Too assertive? Too opinionated? Too conservative? Too liberal?

Verbal, as well as nonverbal, behavior is critically important when the trial attorney seeks to make a reasonably intelligent decision about exercising peremptory challenges during jury selection. Trial lawyers may not categorize their thought processes in terms of (a) paralinguistic cues (for example, speech disturbances, speed of speech, breath rate, pauses, and latencies); (b) kinesic cues (for example, eye contact, facial cues, and body postures and movements), or even (c) verbal cues, but we all use such communication cues in making evaluations about people.[1]

In this case, when defendant's attorney arrived, the State had concluded its examination of the jurors and had passed the panel. I find the trial court's decision to proceed, in the absence of defense counsel, harmful error, and I vote for a new trial.

---

1. *See generally* Suggs and Sales, *Using Communication Cues to Evaluate Prospective Jurors During the Voir Dire,* 20 Ariz. L. Rev. 629, 632-38 (1978).